(No. 36176.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error *vs.* WILLIAM GREGORY *et al.*, Plaintiffs in Error.

*Opinion filed September 22, 1961.*

William R. Yowell, of Chicago, for plaintiffs in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher and James R. Thompson, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Daily delivered the opinion of the court:

Defendants, William Gregory and Everett Strayhorn, along with four other men, were charged by an indictment returned to the criminal court of Cook County with having murdered Joseph Ciavirelli during the robbery of a Chicago tavern. When jointly tried by a jury, defendants were found guilty and each was sentenced to the penitentiary for a term of 199 years. Writ of error has been allowed under the provisions of Rule 65—1(2) of this court. Ill. Rev. Stat. 1959, chap. 110, par. 101.65—1(2).

Although numerous grounds for reversal are advanced, our attention is immediately drawn to the contention that defendants were denied their constitutional right to a fair and impartial trial because evidence of their participation in separate and unrelated crimes was permitted to come

before the jury, and because the prosecutor was guilty of improper and inflammatory argument. With commendable candor the People admit error occurred in such respects, but insist no prejudice to the defendants resulted.

After his arrest, Gregory, and three of those arrested with him, signed a written confession admitting their guilt and also implicating Strayhorn who was not arrested until the following day. Among other things, the confession contained the following which was read to the jury:

"Q. Bill, you say you didn't know who had the gun?

A. No, on the job we pulled here I don't.

Q. Have you seen this gun before?

A. Yes, on some jobs we pulled.

Q. Who carried the gun on the prior jobs?

A. Sometimes different ones. You know what I mean, switched them up. I didn't see it on the night of the killing."

The confession was admitted in evidence against Gregory alone and all references to Strayhorn were deleted therefrom. However, from our examination of the record, and the confession in particular, we are satisfied the jury was nonetheless aware that it implicated Strayhorn, so that any prejudicial effects from its admission into evidence in full operated as to him as well as to Gregory. Cf. *People* v. *Clark,* 17 Ill.2d 486.

Under our concepts of a fair and impartial criminal trial, it is elementary that a defendant, no matter how reprehensible his crime or how black his history of past misdeeds, is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged. Accordingly, it it well settled that evidence of other offenses unrelated to the crime for which a defendant is on trial is incompetent. And where such irrelevant material is contained in an otherwise competent statement or confession, it must be deleted before the statement or confession is read to the jury, unless to do so would seriously impair its

evidentiary value. (*People* v. *Oden,* 20 Ill.2d 470; *People* v. *Donaldson,* 8 Ill.2d 510; *People* v. *Lane,* 300 Ill. 422.) As a corollary to this rule, we have pointed out that the duty of the State's Attorney to safeguard the rights of all the people extends to one accused of a crime, and have held that the failure of a prosecutor to see to the deletion of prejudicial and improper matters from a statement or confession is a violation of that duty. *People* v. *Oden,* 20 Ill.2d 470.

In the present case the references to prior crimes which were permitted to remain in the confession, and to be conveyed to the jury, cannot be distinguished from those condemned as being improper and irrelevant in the *Oden* and *Donaldson* decisions. Similarly, and despite evidence clearly showing guilt, we are likewise of the opinion that the references to the "previous jobs pulled" operated to the prejudice of defendants and, together with improper argument that followed, served to deny them a fair and impartial trial. Whether defendants had committed robberies and carried guns in the past were matters wholly unrelated to the offense charged in the indictment and were without evidentiary value in determining their guilt of that offense. Instead, the references could only have served to instill in the minds of the jurors a belief that defendants were evil men and hardened criminals who would be easily disposed to commit the crime of murder with which they were charged. Evidence of such nature should not be at hand to influence the jury in its determinations. Cf. *People* v. *Polenik,* 407 Ill. 337; *People* v. *Gougas,* 410 Ill. 235; *People* v. *Wilson,* 400 Ill. 461.

When the portion of the confession relating to "prior jobs" was read, counsel for both Gregory and Strayhorn objected and moved for a mistrial. The court, while recognizing the reference was improper, denied the motions, but instructed the jury: "We are only trying the case here before us. As to the other jobs or other cases, you are not

to consider it at all." Because of this cautionary instruction, the People now urge that any error committed was cured. We cannot agree that this is so. Once a jury is permitted to hear evidence strongly calculated to impress the minds of the jurors and create prejudice against an accused, the damage is done. Jurors are not robots but are humans with qualities common to all persons. As was pointed out in *People* v. *White,* 365 Ill. 499, 510, the individual's emotions are not destroyed when he becomes a juror, and neither is the power of memory or the function of thinking for one's self suspended when a person sits in a jury box. We conclude in this case that the error in admitting the evidence was not cured by the court's instruction.

During closing argument the assistant State's Attorney made reference to the wife and children of the murder victim as follows:

"How serious is it for five men to take up arms, to pack five guns and go into a man's place of business where he is making his living for Jennie and for those three kids and just kill him  *  *  *  he has as much right to see that Jennie and those kids aren't left alone, as you and I have  *  *  *  Mrs. Ciavirelli, who was a widow on May 7, 1950 —she's going to be a widow on May 7, 1951, 1952, 1953, 1954 and every year thereafter. Lawrence and Joseph, and whatever his name is—the third one—they are going to be orphans this week, the next week, next year and forever after  *  *  *

"And what's their dessert? Death to the wheelman. Death to the coverman. That's the only thing that they deserve. That's what you have got to give them. Either that or tell Jennie, tell Jennie, sitting out there that Joe isn't important enough. If it had been somebody else maybe we would have given them the chair, but not with Joe—he's just a little tavern owner."

The People concede this argument was improper (See: *People* v. *Dukes,* 12 Ill.2d 334; *Filippo* v. *People,* 224 Ill.

606

212), but take the position it was not prejudicial because the jury did not impose the death penalty. This contention is also without merit. In any case wherein the jury fixes the punishment, substantial and equal justice would require that the jury make its determination without the influences of improper argument. (*People* v. *Black,* 317 Ill. 603.) As we stated in *People* v. *Donaldson,* 8 Ill.2d 510, 519: "Every defendant, be he a sinner or a saint, has the right to expect that his fate will be fixed with reference only to the circumstances of the crime with which he is charged." While not the ultimate punishment for murder, a sentence to the penitentiary for 199 years is nonetheless an unusually severe penalty which could easily have resulted in part from prejudice created by the improper argument and the improper evidence.

Considering both the improper argument and the evidence of unrelated crimes heard by the jury, it is our opinion that defendants did not receive the fair and impartial trial to which they were entitled and that justice requires they be accorded a new trial. Other errors have been assigned by both defendants. However, we do not consider them at this time because of the probability that they will not recur upon retrial.

The judgment of the criminal court of Cook County is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*