THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES CLARK, Defendant-Appellant.

First District (5th Division)    No. 62098

Opinion filed August 13, 1976.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Donna Jean Ramey, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Defendant, James Clark, appeals from convictions for aggravated assault on a peace officer, aggravated assault with a deadly weapon, armed violence, and unlawful use of a weapon. Following a jury trial and a finding by the jury of guilty on these counts, the court entered judgments on the verdicts and sentenced defendant to prison terms of 364 days on both counts of aggravated assault; 1 to 3 years on armed violence; and 3 to 9 years on unlawful use of a weapon pursuant to the enhanced penalty provision (Ill. Rev. Stat. 1973, ch. 38, par. 24—1(b)),[1] with all terms running concurrently.

On appeal in this court, defendant Clark contends (1) he was deprived of a fair trial because of the prosecutor's prejudicial cross-examination; (2) the failure to conduct a bifurcated trial and the admission in evidence of a previous robbery conviction to prove unlawful use of weapons within five years of release from the penitentiary facilitated guilty verdicts on all charges and was prejudicial; (3) the convictions arose out of the same conduct and all but the unlawful use of weapons conviction

---

[1] A person convicted of a felony under the laws of this or any other jurisdiction, who, within 5 years of release from penitentiary or within 5 years of conviction if penitentiary sentence has not been imposed, violates any subsection of this section commits a Class 3 felony.

should be vacated; (4) the general jury verdict of guilty of unlawful use of weapons should be attributable to the lesser misdemeanor charge rather than the felony (enhanced penalty) charge; (5) he was not proven guilty beyond a reasonable doubt.

The State's evidence revealed that on July 21, 1974, at approximately 4:45 a.m. uniformed Chicago police officers Patrick Kellam and Rochelle McClain were patrolling the vicinity of Kedzie Avenue and Central Park Avenue in a marked squad car. As they proceeded east through an alley, Joseph Dixon approached the car and told the officers that defendant Clark was around the corner armed with a pistol. The officers continued through the alley to Kedzie Avenue where they observed defendant about 150 feet north of them on the west side of the street near the doorway of the building at 1320 S. Kedzie Avenue. Defendant was pointing a handgun at a man across the street. The police immediately pulled onto Kedzie Avenue and drove to defendant's location. When defendant saw the police, he fled through a gangway. Both officers gave pursuit taking different routes. Officer McClain regained contact with defendant in an alley. At that point defendant was 15 feet from McClain and was running away. McClain shouted, "Halt, police. Drop the gun." Defendant then spun around and pointed the gun at McClain's chest. McClain responded by firing two shots, wounding defendant. Defendant then ran into an abandoned building. By this time other police officers arrived on the scene. Sgt. Frank Hughes worked his way to the front of the abandoned building and saw defendant inside. Following Hughes' command defendant came out of the building. He fell to the ground saying that he had been shot. Other officers searched the abandoned building for defendant's gun. A loaded .38 Smith and Wesson revolver was found in the building and identified at trial as the one used by defendant. Four bullets were removed from the revolver.

Joseph Dixon testified that he observed defendant point the gun at McClain.

The defense attempted to show inferentially through the testimony of the manager of the Geneva Sports Shop and Louis Carter that the weapon recovered by police was a "drop gun"; that is, one placed by police near an individual to give the impression he was armed. Carter testified that he purchased a gun from the Geneva Sports Shop 7 years earlier and that it was taken away from him by a Chicago police officer. The manager of the Geneva Sports Shop testified that the serial number of the weapon found in the abandoned building matched the serial number of a gun sold to Louis Carter.

Defendant testified that he was standing in front of 1310 S. Kedzie, which was about 7 miles from his home, waiting for Joseph Dixon to

return when he first saw the police. He admitted fleeing from police, but denied that he had a gun or that he aimed a gun at Officer McClain and denied seeking refuge in the abandoned building.

In rebuttal, conviction records were admitted into evidence showing defendant had been convicted twice for burglary and once for attempt murder. Earlier in the trial defendant's conviction for robbery had been admitted in evidence through stipulation.

OPINION

It is first argued that the prosecutor adduced evidence of other crimes to infect the trial under the pretext of impeaching defendant on cross-examination because the defense had opened such inquiry on direct examination. Defendant points to the State's line of questioning concerning whether defendant ever knew how to handle a gun or whether he ever pointed or fired a gun at a Chicago police officer. Defendant also complains of the following line of questioning which was the subject of a continuing objection that had been overruled by the trial court:

"Q. Mr. Clark, I believe my last question or last few questions prior to breaking in this matter was have you ever been shot before; is that correct?

A. Yeah.

Q. And I believe you told yes; is that correct?

A. Yes.

Q. And where were you shot at physically on your body, sir?

A. In my right arm.

Q. In your right arm. Now, did that occur January 4th, 1972?

A. Yeah.

Q. And did that occur in the vicinity of 5203 West Congress?

A. Yes.

Q. Now, you previously told us that you have never pointed a gun at a Chicago police officer nor have you fired a gun at a Chicago police officer; is that correct?

A. Yes.

MR. PTACEK: Objection

THE COURT: Continuing objection is noted.

MR. OBERTS: Q. Now, on January 4th, 1972, did you observe the individual that shot you in the right arm?

THE WITNESS: A. No.

Q. You never seen the person?

A. No.

Q. On January 4th, 1972, did you have a gun in your possession?

A. No.

Q. A handgun? You did not?

A. No.

Q. On January 4th, 1972, did you fire a gun at a Chicago police officer?

A. No.

Q. And on January 4th, 1972, you never attempted to murder a Chicago police officer?

A. No."

■■ Defendant maintains that eliciting such testimony from him at trial violated the principle that every defendant is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged and that evidence of other offenses unrelated to the crime for which defendant is on trial is incompetent. (*People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120.) While we agree with this proposition there are exceptions to the rule. Evidence tending to show the commission of other crimes by a defendant is generally admissible when it is relevant in proving the crime charged (*People v. Hall* (1967), 38 Ill. 2d 308, 231 N.E.2d 416), and where it shows identity, design, motive, knowledge, or proximity to the crime in time or place. (*People v. Cage* (1966), 34 Ill. 2d 530, 216 N.E.2d 805). Evidence of other crimes may also be used to impeach the credibility of the defendant when he has taken the witness stand. (*People v. Helm* (1968), 40 Ill. 2d 39, 237 N.E.2d 433.) In addition, the State may cross-examine a defendant concerning his past criminal activities when he testifies about those activities on direct examination by his attorney. *People ex rel. Walker v. Pate* (1973), 53 Ill. 2d 485, 292 N.E.2d 387; *People v. Bey* (1969), 42 Ill. 2d 139, 246 N.E.2d 287.

In the instant case, the record reflects that defendant was cross-examined about his prior attempt murder conviction because the prosecutor erroneously believed defendant had testified on direct examination that he never fired a gun at a Chicago police officer when, in fact, he testified that he never fired a gun at the Chicago police officer. We believe that defendant neither opened the door to such cross-examination nor testified in such a manner as to be subject to impeachment by direct contradiction. Since neither exception was available to the State defendant could only be impeached upon his prior conviction by introducing the record of that conviction. (*People v. Moses* (1957), 11 Ill. 2d 84, 142 N.E.2d 1.) Therefore, we are of the opinion that the cross-examination of defendant as to his attempt murder conviction should not have been admitted into evidence. However, it is not our policy to reverse a judgment of conviction merely because error has been committed, unless it appears that real justice has been denied or that the verdict of the jury may have resulted from such error. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347.) The evidence in the present case shows,

beyond a reasonable doubt, that defendant committed the acts charged. In addition, the record of defendant's attempt murder conviction was admitted in evidence as well as the record of two prior burglary convictions. Therefore, we believe that the error complained of was not a material factor in defendant's conviction and does not justify a reversal.

■■ Defendant next contends the admission in evidence of a previous robbery conviction to prove unlawful use of weapons within five years of release from the penitentiary at a joint trial of separate offenses was inherently prejudicial and that a bifurcated trial seems to be constitutionally required. The State argues, however, that the failure of defendant to properly move for a severance before trial constitutes waiver of a bifurcated trial. We agree. The failure to move for severance forecloses any claim of prejudice resulting from a joint trial. (*People v. Rutledge* (1973), 14 Ill. App. 3d 290, 302 N.E.2d 425.) Furthermore, defendant was not denied due process of law by proceeding with a joint trial. (*Spencer v. Texas* (1967), 385 U.S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648.) We find, therefore, that the trial court properly conducted a trial upon all of the charges.

It is also contended by defendant that the convictions for armed violence, and two counts of aggravated assault should be vacated since they arose from the same conduct. The State maintains defendant was properly found guilty of armed violence and felonious unlawful use of weapons, and agrees with defendant that the two convictions of aggravated assault must be reversed.

Where several charges are based on the same conduct there can be but one conviction, that of the greater offense. (*People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1.) The test of whether offenses arise out of the same conduct is whether they are "separable" or "independently motivated." *People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24.

■■ ■ In the instant case the conduct which constituted both aggravated assault charges also constituted the armed violence charge. (Ill. Rev. Stat. 1973, ch. 38, par. 33A—2.) But the conduct which resulted in the unlawful use of weapons conviction was separable from the armed violence conviction. We believe, therefore, that defendant was properly convicted of armed violence and felonious unlawful use of weapons and that the two convictions of aggravated assault must be reversed.

Defendant further contends that where the jury returned a single guilty verdict as to unlawful use of weapons despite two separate unlawful use of weapons counts in the indictment (one a felony, the other a misdemeanor), defendant was entitled to have the verdict attributable to the lesser charge. The record reveals that the jury was instructed only as to the elements of felonious unlawful use of weapons. (Ill. Rev. Stat. 1973,

ch. 38, pars. 24—1(a)(10), 24—1(b).) As a consequence we find defendant's contention to be without merit.

■■ Defendant finally contends he was not proven guilty beyond a reasonable doubt because the gun introduced in evidence as that used by defendant was manifestly a police throw-away gun. Testimony was adduced, however, from both McClain and Dixon that defendant had aimed the gun directly at McClain. The gun used by defendant was clearly identified at trial.

We believe that the jury's verdict was not so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. Accordingly, the judgments of conviction for armed violence and unlawful use of a weapon are affirmed and the judgments of conviction for aggravated assault on a peace officer and aggravated assault with a deadly weapon are reversed.

Affirmed in part; reversed in part.

LORENZ, P. J. and SULLIVAN, J., concur.